## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | | |
|---|---|---|
| LARRY JEROME KEITH, | :: | CIVIL ACTION NO. |
| Inmate # 718546, | :: | 3:05-CV-0027-JTC |
|     Plaintiff, | :: | |
| | :: | |
|    v. | :: | |
| | :: | |
| SHERIFF DEE STEWART, | :: | PRISONER CIVIL RIGHTS |
| CAPTAIN MICHAEL RAY, | :: | 42 U.S.C. § 1983 |
| KINDAL R. DELAY, P.A., | :: | |
| SHERIFF DEP'T MEDICAL | :: | |
| STAFF, | :: | |
|     Defendants. | :: | |

## ORDER AND OPINION

Now before the Court are (1) Defendant Kindal R. Delay, P.A.,'s Motion for

Summary Judgment [Doc. 17]; (2) Motion for Summary Judgment by Defendants

Stewart, Ray and "Sheriff Department Medical Staff" (hereinafter, collectively, "the

Sheriff Department Defendants") [Doc. 38]; (3) Plaintiff's responses to Defendants'

summary judgment motions [Docs. 20, 23, 24, 26, 27, 30, 31, 32, 48, 49, 51, 52, 54,

55, 60, 65, 68, 69]; (4) Plaintiff's motion to amend his complaint [Doc. 33];

(5) Plaintiff's two motions for appointment of counsel [Docs. 40, 70]; and

(6) Plaintiff's "motion" for a settlement conference [Doc. 57].

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In his complaint, signed and submitted on March 29, 2005, pursuant to 42 U.S.C. § 1983, Plaintiff alleged that since January 8, 2005, when his incarceration at the Spalding County Detention Center (the Detention Center) began, he had experienced "excruciating pain." [Doc. 1 ¶ IV.] He stated that, in an effort to obtain medication effective against his pain, he had provided the Medical Staff with the names of six orthopedic doctors who had treated him over the past three years, but the medical personnel had responded only that he "was getting the best they had at this facility."  Plaintiff asserted that all of his complaints were "centered around [his] medical needs," but he also alleged that he had been denied grievance forms; his grievances had gone unanswered; he had been denied use of the law library; his legal mail had been opened outside of his presence; and important documents were missing from his mail.  [Id.]  Plaintiff sought redress for his pain and suffering.  [Id. ¶ V.] Plaintiff has filed numerous "supplements" to his original complaint.  [See Docs. 12, 15, 16, 18, 21, 25, 36, 37, 41, 42.]  Plaintiff was transferred to state prison on or about March 10, 2006.  See www.dcor.state.ga.us at "Georgia Inmate Query" for GDC ID Number 718546.

## II.  SUMMARY JUDGMENT STANDARD

2

Summary judgment is proper if the pleadings and other documents on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering a summary judgment motion, a court must "view the evidence and all factual inferences therefrom in the light most favorable" to the non-movant. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are implausible." Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (internal quotations omitted). Morever, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The movant bears the initial burden of demonstrating that it is entitled to summary judgment. Apcoa, Inc. v. Fidelity Nat'l Bank, 906 F.2d 610, 611 (11th Cir. 1990). It may do so by showing "that there is an absence of evidence to support the

AO 72A
(Rev.8/82)

nonmoving party's case." <u>Celotex</u>, 477 U.S. at 325. Once the movant has properly supported its motion, the non-movant must then "come forward with specific facts showing that there is a *genuine issue for trial*," i.e., that the evidence is sufficient to support a jury verdict in its favor. <u>Bailey v. Allgas, Inc.</u>, 284 F.3d 1237, 1243 (11th Cir. 2002) (internal quotations omitted). <u>See also</u> <u>Chanel, Inc. v. Italian Activewear of Florida, Inc.</u>, 931 F.2d 1472, 1477 (11th Cir. 1991) (stating that "the non-moving party must come forward with *significant, probative evidence*") (emphasis added). "[C]onclusory assertions . . . [without] supporting evidence are insufficient to withstand summary judgment." <u>Holifield v. Reno</u>, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997).[1]

A motion for summary judgment may be supported or opposed with "the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

[1]Nevertheless, "courts have been reluctant to apply" to <u>pro</u> <u>se</u> prisoners the Rule 56(e) requirement that a non-movant "cannot rely on his pleadings, but must file a response that includes other evidence." <u>Lawrence v. Wiley</u>, Civil Action No. 1:03-CV-2970, 2006 U.S. Dist. LEXIS 4917, at *15-*16 (N.D. Ga. Jan. 24, 2006). <u>See also</u> <u>Gonzalez v. Long</u>, 889 F. Supp. 639, 642 (E.D.N.Y. 1995) (allowing <u>pro</u> <u>se</u> prisoner additional time to respond to summary judgment motion, "mindful that *pro se* litigants should be given special latitude" in doing so, but noting that the "abject failure to comply with the requirements of Rule 56(e) and [the Court's local rule] would normally require the Court to grant" the summary judgment motion).

4

with the affidavits, if any." Fed. R. Civ. P. 56(c).[2] "As a general rule, the court may consider on a Rule 56 summary judgment motion any material that would be admissible or usable at trial." Property Mgmt. & Inv., Inc. v. Lewis, 752 F.2d 599, 604 n.4 (11th Cir. 1985) (assuming without deciding "that authenticity and completeness are among the evidentiary requirements of Rule 56"). See also Woods v. City of Chicago, 234 F.3d 979, 987-88 (7th Cir. 2000) (stating that Rule 56(e) "does not *require* that all supporting material be submitted in affidavit form,"[3] and

---

[2]This Court's Local Rules provide additional requirements. "A movant for summary judgment shall include with the motion and brief a separate, concise, numbered statement of the material facts to which the movant contends there is no genuine issue to be tried. Each material fact must be numbered separately and supported by a citation to evidence proving such fact. The court will not consider any fact: (a) not supported by a citation to evidence (including page or paragraph number); (b) supported by a citation to a pleading rather than to evidence; (c) stated as an issue or legal conclusion; or (d) set out only in the brief and not in the movant's statement of undisputed facts." N.D. Ga., LR 56.1.B.(1). The response to the motion for summary judgment "shall contain individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts." N.D. Ga., LR 56.1.B.(2)a.(1). "This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1 B.(1)." N.D. Ga., LR 56.1.B.(2)a.(2).

[3]An affidavit "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence," and may be supported by "[s]worn or certified copies" of documents referred to in the affidavit. Fed. R. Civ. P. 56(e). An "unsworn declaration, certificate, verification, or statement" may be used in the place of a sworn

5

stating further that a "court may consider any material that would be admissible or usable at trial, including properly authenticated and admissible documents or exhibits") (citation and internal quotations omitted).

### III.  CONTENTIONS OF THE PARTIES

**A.**   <u>**Delay's motion for summary judgment**</u>

Delay sets forth the following undisputed material facts in support of his motion for summary judgment: (1) on January 8, 2005, when Plaintiff "was booked into" the Detention Center, Delay's employer, Inmate Physician Services, Inc., had a contract with Spalding County to provide Detention Center inmates with medical care, which contract expired on or about June 3, 2005 [Doc. 17 "Defendant Kindal R. Delay, P.A.'s Statement of Material Facts" (hereinafter "Delay's Facts") ¶¶ 1-2; <u>see</u> Doc. 17 Ex. B (Hall Aff.) ¶ 3]; (2) on January 18, 2005, Delay responded to Plaintiff's request for medical attention for his back pain, and Plaintiff informed Delay that a physician "outside" of the Detention Center had prescribed hydrocodone, which is a "strong and addictive" narcotic (as is oxycodone) [Delay's Facts ¶¶ 3, 5; <u>see</u> Doc. 17 Ex. A (Delay Aff.) ¶ 3; Hall Aff. ¶ 5]; (3) Dr. Hall prescribed Motrin 800 mg and Baclofen 10 mg for Plaintiff's back pain, which combination "meets the

---

affidavit to support or oppose a motion for summary judgment if the declaration "is subscribed by [the declarant], as true under penalty of perjury, and dated." <u>See</u> 28 U.S.C. § 1746.

applicable standard of care for treating back pain" [Delay's Facts ¶¶ 3-4; <u>see</u> Delay Aff. ¶ 3; Hall Aff. ¶ 4]; (4) "Plaintiff was not in a closed and clinical setting . . . during the time Dr. Hall and Delay saw patients" at the Detention Center [Delay's Facts ¶ 6; <u>see</u> Delay Aff. ¶ 4]; (5) on January 23, 2005, Delay saw Plaintiff again, and Plaintiff requested hydrocodone, refusing to continue his existing medication regime because it "was not working" [Delay's Facts ¶ 7; <u>see</u> Delay Aff. ¶ 5]; (7) on February 24, 2005, Plaintiff again complained to Delay of back pain, and "Dr. Hall prescribed Darvocet N-100, a narcotic, twice a day for ten days," and replaced the Baclofen with "Robaxin 500 mg, another strong muscle relaxer" [Delay's Facts ¶ 9; <u>see</u> Delay Aff. ¶ 7]; (8) on March 9, 2005, Dr. Hall reduced Plaintiff's prescription for Darvocet N-100 to a single daily dose, which, in combination with the Robaxin, "meets the applicable standard of care for treatment of Plaintiff's pain" [Delay's Facts ¶ 11; <u>see</u> Hall Aff. ¶ 7]; (9) on April 13, 2005, Dr. Hall suspended the Darvocet to ensure that Plaintiff did not become overly dependent on the drug, and Plaintiff refused the Robaxin 500 mg, even though it "alone meets the applicable standard of care to treat Plaintiff's back pain," and demanded the Darvocet instead [Delay's Facts ¶¶ 12-13; <u>see</u> Hall Aff. ¶ 8; Delay Aff. ¶ 8]; and (10) Delay "dispensed all medications prescribed by Dr. Hall as instructed" until Delay last saw Plaintiff on June 2, 2005 [Delay's Facts ¶¶ 14-17; <u>see</u> Delay Aff. ¶¶ 9-10; Hall Aff. ¶ 9].

7

Dr. Hall's affidavit reveals that (1) he is the "Chief Executive Officer and chief medical officer for Inmate Physician Services, Inc.," and his contract to provide medical services to the Detention Center ran "from October 2, 2001[,] until approximately June 3, 2005" [Hall Aff. ¶¶ 2-3]; (2) although a physician "outside" of the Detention Center had prescribed either hydrocodone or oxycodone for Plaintiff, these "are strong and addictive narcotics" that "should not be used in jail, unless in a closed clinical setting," and Dr. Hall "was not going to prescribe" them for Plaintiff [id. ¶¶ 4-5]; and (3) "the prescribed course of treatment and periodic adjustments to medication for [Plaintiff] throughout his term of care under [Dr. Hall's] supervision met the applicable standard of care for a physician, and were adequate and appropriate to treat Plaintiff's complaints of pain" [id. ¶ 9].

Defendant Delay argues that he is entitled to summary judgment because (1) a disagreement over a course of treatment does not constitute deliberate indifference to a serious medical need; (2) "Plaintiff has provided no evidence that he suffered any harm, much less significant harm[,] from receiving Motrin, Baclofen, Robaxin and Darvocet (for a limited time) rather than hydrocodone or oxycodone and more Darvocet for pain relief"; and (3) although, as a privately employed person fulfilling a government function, he is not eligible for qualified immunity, "he is entitled to an affirmative good faith defense." [Doc. 17 Supp. Br. at 6-10.]

8

**B.**     <u>**The Sheriff Department Defendants' motion for summary judgment**</u>

After asserting certain general defenses applicable to all of the five claims arguably raised in Plaintiff's complaint, the Sheriff Department Defendants address each claim in turn: (1) deliberate indifference to Plaintiff's medical needs, (2) failure to respond to Plaintiff's grievances, (3) denial of access to the law library, (4) the unauthorized opening of Plaintiff's legal mail, and (5) Plaintiff's loss of important personal documents.  [<u>See</u> Doc. 38 Supp. Br. at 3.]

**1.**     <u>**General defenses**</u>

**a.**     <u>**The "Sheriff Department Medical Staff"**</u>

The Sheriff Department Defendants assert that the "Sheriff Department Medical Staff," designated as a defendant in Plaintiff's complaint, is not an entity amenable to suit under Georgia law, and, therefore, this action against that Defendant should be dismissed.  [<u>Id.</u> at 7.]  Plaintiff agrees that the Medical Staff is not a legal entity that may be sued, "with [the] exceptions of Dr. Robert Hall and P.A. Kindal Delay."  [Doc. 60 at 1; <u>see</u> Doc. 33 (Plaintiff's motion to amend his complaint to add Dr. Hall as a defendant).]

### b. Official capacity claims against Sheriff Stewart and Captain Ray

Sheriff Stewart and Captain Ray assert that they enjoy Eleventh Amendment immunity from the instant action. [Doc. 38 Supp. Br. at 8.] Previously, noting that it was not clear whether Plaintiff intended to sue the Defendants in their official or individual capacities, or both, this Court ruled that Sheriff Stewart was immune from suit in his official capacity, but withheld any such ruling with respect to Captain Ray or with respect to either Defendant in his individual capacity.[4] [See Doc. 4 at 2-6.]

### c. Qualified immunity

Finally, Sheriff Stewart claims qualified immunity from Plaintiff's claims against him in his individual capacity because he "was at all times acting within the scope of his discretionary authority, and he had no fair warning that any of his actions and/or decisions were unlawful or potentially unlawful." [Doc. 38 Supp. Br. at 12.]

### 2. Deliberate indifference to Plaintiff's medical needs

---

[4]The Sheriff Department Defendants assert that Plaintiff has attempted to amend his complaint in order to sue Sheriff Stewart in his individual capacity, demonstrating thereby that Plaintiff did not intend to sue Captain Ray in that capacity. [Doc. 38 Supp. Br. at 8-9.] In any case, Sheriff Stewart and Captain Ray deny liability in their individual capacities, claiming that neither their own personal actions nor any policy at the Detention Center caused the alleged violations of Plaintiff's constitutional rights. [Id. at 9-11.]

10

In their statement of undisputed material facts, filed on November 10, 2005, the Sheriff Department Defendants set forth the following summary of Plaintiff's medical history at the Detention Center: (1) since shortly after arriving at the Detention Center on January 8, 2005, Plaintiff was seen on multiple occasions by various members of the medical staff, including physician's assistant (P.A.) Kindal Delay, another P.A. named Eric, Dr. Hall, and Dr. Smith [Doc. 38 "Statement of Material Facts Not in Dispute" (hereinafter "Sheriff Dep't Defs.' Facts") ¶¶ 1-3]; and (2) Plaintiff received multiple pain medications, including Motrin 800 mg, Baclofen 10 mg, Darvocet N-100 mg, and Robaxin 500 mg, which "met the applicable standard of care to treat Plaintiff's back pain," but Plaintiff "wanted narcotic medication such as hydrocodone or oxycodone," which Dr. Hall declined to prescribe "based on his medical judgment," not on Detention Center policy.  [Sheriff Dep't Defs.' Facts ¶¶ 4-5, 24-26; see Delay Aff.; Hall Aff.; Stewart Aff. ¶¶ 3-5.]

The Sheriff Department Defendants dispute Plaintiff's assertions, set forth in the supplements to his complaint, that a Detention Center policy prohibited his receipt of narcotic medication. [Doc. 38 Supp. Br. at 5, Stewart Aff. ¶¶ 3-5, Ray Aff. ¶¶ 3-5.] They contend that, instead, Dr. Hall made the decision about which medications to prescribe to Plaintiff "based on his medical judgment and belief that strong, addictive narcotics should only be prescribed to inmates in closed clinical settings." [Doc. 38

11

Supp. Br. at 5; see Hall Aff. ¶¶ 4-8.]   The Defendants assert that deliberate indifference requires more than a mere disagreement over a course of treatment. [Doc. 38 Supp. Br. at 13-15.]  They contend that Plaintiff "was not denied medical treatment altogether, just denied the treatment he desired." [Id. at 14-15.]  Moreover, they assert that Sheriff Stewart (and by implication, Captain Ray as well) had no "'fair warning' that a policy prohibiting the prescription or distribution of narcotic pain medication violates the Eighth Amendment[]." [Id. at 16-17.]

### 3.  Failure to respond to Plaintiff's grievances

The Sheriff Department Defendants argue that, because there is no constitutional right to an inmate grievance procedure, Plaintiff has no viable claim under 42 U.S.C. § 1983 based on their alleged failure to respond to his grievances. [Id. at 17-18.]  Defendants rely in part on Wildberger v. Bracknell, 869 F.2d 1467, 1467-68 (11th Cir. 1989) (implying, without holding explicitly, that a state prisoner has "no entitlement to a [prison] grievance procedure under the Federal Constitution").  See also Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (holding that there "is no legitimate claim of entitlement to a grievance procedure" and, therefore, no protectable liberty interest in any such procedure).

### 4.  Denial of access to legal materials

The Sheriff Department Defendants note that, because there is no law library at the Detention Center, inmates must submit requests for legal materials to Sgt. Lowrimore, a trained paralegal, who then obtains the materials from the library at the Spalding County courthouse. [Doc. 38 Supp. Br. at 19.]  According to Defendants, Sgt. Lowrimore has responded to each of Plaintiff's properly filed requests for legal materials, thus satisfying Defendants' constitutional duty to provide Plaintiff with access to legal assistance. [Id. at 19-20; see Sheriff Dep't Defs.' Facts ¶¶ 6-9, 13-22; Doc. 50 Lowrimore Aff. ¶¶ 3-7 & attachs.]  As noted infra, Plaintiff does not dispute Defendants' assertion that he was given access to legal materials while housed at the Detention Center. [See Doc. 51 at 1.]

**5.**     **The opening of Plaintiff's legal mail outside of Plaintiff's presence**

The Sheriff Department Defendants assert that Plaintiff has not alleged that any named Defendant personally opened Plaintiff's legal mail outside of his presence or promulgated a policy allowing for such a practice, and, therefore, this claim also fails as a matter of law. [Doc. 38 Supp. Br. at 20-21.]

**6.**     **The loss of personal documents**

Finally, for the reasons noted above with respect to Plaintiff's claim regarding the alleged opening of his legal mail, and also because Georgia law provides a post-deprivation remedy for the loss of personal property, the Sheriff Department

13

Defendants assert that Plaintiff's claim against them for the loss of his personal documents also fails as a matter of law.  [Id. at 21.]

**C.**   **Plaintiff's responses**

**1.**   **Plaintiff's responses to Delay's motion for summary judgment**

As noted previously, Plaintiff has filed numerous responses to each motion for summary judgment.  Based on these responses, the Court has pieced together Plaintiff's version of his medical treatment at the Detention Center.[5]  Plaintiff was first seen by P.A. Delay on January 18, 2005, after submitting several requests to see a doctor. [Doc. 23 at 2.] Plaintiff explained his medical history to Delay, but did not request specific medication.  Instead, he asked to see an orthopedic doctor and requested an extra mat and "something for pain until [he] could see someone who[] could examine [him] and prescribe appropriate medication."  [Id.]  Plaintiff only mentioned hydrocodone when Delay asked about the medication previously prescribed for his back pain, for which he had been receiving treatment since at least

---

[5]For the most part, Plaintiff, who has not filed a sworn affidavit or a declaration subscribed under penalty of perjury in this action, has not opposed either motion for summary judgment with evidence in a form acceptable under Fed. R. Civ. P. 56 or N.D. Ga., LR 56.1.B.(2), supra.  Nevertheless, in deference to Plaintiff's pro se status, the Court will consider the content of Plaintiff's multiple responses to the motions for summary judgment.  See Lawrence, supra.

14

March 5, 2001. [Doc. 27 at 1.]  Plaintiff received medication but not an extra mat. [Doc. 23 at 2.]

On January 23, 2005, "after several complaints and requests," Plaintiff again was seen by Delay, told him that the medication he had received was ineffective against his back pain, which was so severe he could not sleep at night, and requested an extra mat for sleeping, which Delay again denied.  On February 22, 2005, after more requests to see an orthopedic doctor, Plaintiff was seen by Dr. Robert Hall, for the first and only time.  Dr. Hall prescribed "a mild narcotic" and told Plaintiff that he would consult with Dr. Hopkins, a local orthopedic doctor who had treated Plaintiff previously, "about getting something better for the pain," and then "would adjust the medication as warranted."  Plaintiff received an extra mat at that time. [Doc. 23 at 2-3; Doc. 24 at 1; Doc. 27 at 1-2.]

On or about April 13, 2005, Plaintiff noticed a change in his medication and asked to see Dr. Hall, but "Delay told [him] that [his] medication was ended because Sheriff Dee Stewart and Cpt. Ray [were] not going [to] be a part of [an] inmate getting addicted to narcotic drugs," and he also told Plaintiff that he "had to take what they had available."  Delay told Plaintiff that he would not see Dr. Hall or any other doctor and that, as long as Plaintiff was at the Detention Center, he would only get "the medication he prescribed."  [Doc. 23 at 3.]

15

Plaintiff asserts that (1) Delay lied by telling Plaintiff that the Sheriff and Jail Administrator, not Dr. Hall, had ordered the prescription change; (2) neither Delay nor Dr. Hall requested his medical records from his previous doctors, examined his x-rays or scans, or consulted with any of his other doctors; (3) Dr. Hall never examined Plaintiff; and (4) Delay "made sure [that he] wasn't given adequate help by denying [him access] to . . . a doctor who could help [him,] despite the number of requests." Delay knew about Plaintiff's sufferings and allowed them to continue, but Plaintiff "cannot fully blame Dr. Robert Hall, because he only acted" on Delay's advice. [Doc. 23 at 4-6; Doc. 24 at 2.] "[T]he only treatment that was adequate" was the extra mat and the medication that Dr. Hall prescribed, which was "at least something that would curb the pain enough to sleep." [Doc. 24 at 5; Doc. 27 at 5.] However, if Plaintiff had known that Dr. Hall had ordered the change in his medication, he would have named Dr. Hall as a defendant in his original complaint because Dr. Hall knew how serious Plaintiff's medical needs were and "went along with" Delay. [Doc. 24 at 3, 5.] Because Delay and Dr. Hall "knew that they could not do anything to help [him,] it was their duty to see to it that [he] was to receive help from some source." [Doc. 27 at 5.]

Plaintiff has filed copies of various documents that chronicle his requests for stronger medication while at the Detention Center: (1) Medical Requests (Spalding

16

County Sheriff's Office, Jail Operations Division) dated January 10, February 5, March 4 and 15, April 20, May 5 and 24, and July 24, 2005, complaining about his "excruciating" or "severe" or "very severe" pain and seeking more appropriate medication and an appointment with an orthopedic doctor [Doc. 30 at 11-19]; and (2) letters to Sheriff Stewart, Captain Ray, or both, dated March 21, April 15, and May 15, 2005, also complaining about the ineffective medication that he had been receiving at the Detention Center [id. at 2-5].

Previously, as "supplements" to his original complaint, Plaintiff filed copies of various Inmate Complaint Forms, i.e., grievances, that he had submitted to the Spalding County Sheriff's Department on August 18, September 2 and 12, and October 3, 11, 18, and 30, 2005, as well as a letter to Sheriff Stewart dated November 17, 2005 (actually written on November 7, 2005). [Docs. 15, 16, 21, 25, 36, 42.] In his August 18 and September 2 grievances, Plaintiff complained about "4 months plus of undue suffering" and "excruciating pain" due to inadequate pain medication. [Doc. 15 at 2-3.] In his September 12 grievance, Plaintiff noted that Dr. Smith,[6] who

---

[6]Previously, Plaintiff filed a separate complaint against Dr. Smith and Nurse Byron, Civil Action No. 3:05-CV-0113 [Doc. 46], which this Court ordered closed and consolidated with the instant action, as a motion to amend. [Doc. 47.] The Court, in turn, denied that converted motion to amend, without prejudice, "due to Plaintiff's failure to serve Defendants and to provide this Court with proof of service" [Id.] Plaintiff has not objected to that denial or, apparently, attempted to remedy the deficiencies in his motion to amend his complaint to add Dr. Smith and Nurse Byron

17

apparently replaced Dr. Hall as the chief medical officer for inmate care at the Detention Center, told Plaintiff that he could not write a prescription for the appropriate medication to treat Plaintiff's pain because of the "policy of this Jail," and that Plaintiff "was lucky to have received the prescription from Dr. Hall." [Doc. 16 at 2.]

In his October 3 grievance, Plaintiff stated that he was suffering "excruciating pain because Dr. Robert Hall['s] explicit orders [were] not being followed," and that "Dr. Hall prescribed a certain medication which relieved [Plaintiff's] pain[,] and the medical staff substituted the medication without warning or notice." [Doc. 25 at 2.] Plaintiff noted Dr. Smith's explanation that, "regardless of his personal opinion," his employer, Correctional Health Services, did not "prescribe or administer any narcotic based medication to inmates," and "the medication that was substituted for the original medication prescribed by Dr. Hall was the strongest medication given to any inmate in a state facility." If Plaintiff were a civilian, Dr. Smith admitted, he would have prescribed narcotic medication as appropriate to treat his chronic pain. [Id. at 3.] Plaintiff complained that Dr. Smith did not examine him personally, review any of Plaintiff's medical records, or refer him to an orthopedic doctor. [Id. at 3-4.]

───────────────────────

as defendants in this action.

18

In his October 30 grievance, Plaintiff stated that he had been x-rayed in September, and the radiologist had told him that he had spurs around the cervical fusions in his spine, but, even so, Plaintiff had not been allowed to see an orthopedic doctor.[7]  Plaintiff also stated that Dr. Smith refused to change the ineffective medication Plaintiff had been given since August 2005, despite his "suffering with excruciating pain in [his] lower back and upper extremities of [his] spine." [Doc. 36 at 2-3.]  Plaintiff lodged a similar complaint in his November 7 letter to Sheriff Stewart, stating that he had "been unable to sleep because of the difficulty adjusting [his] head in an almost 90-degree angle to alleviate some pain in order to sleep." [Doc. 42 at 2-3.]

### 2.   Plaintiff's responses to the Sheriff Department Defendants' motion for summary judgment

In response to the Sheriff Department Defendants' motion for summary judgment, Plaintiff states that when he noticed that Dr. Hall's prescription for Darvocet "had been switched," he confronted Delay, who advised him that Sheriff Stewart and Captain Ray would not allow an inmate to become addicted to narcotic medication.  [Doc. 48 at 2-3.]  Delay changed Plaintiff's medication without

---

[7]Plaintiff has not filed a copy of these x-rays with the Court.

19

informing Dr. Hall, and Stewart and Ray were "aware of this long before [his] complaint was filed."  [Id. at 3-4.]

Plaintiff states that the only material facts set forth in the Sheriff Dep't Defs.' Facts that he does not dispute are those related to the actions of Sgt. Lowrimore, "who[] has extended himself beyond his call of duty to help [Plaintiff] and has provided commendable service to [his] research." [Doc. 51 at 1.] Plaintiff states that "Darvocet is not a medication of concern about addiction," and the Sheriff Department Defendants cannot rely upon Dr. Hall's affidavit because Dr. Hall lied therein to protect his employee, P.A. Delay, which lies Plaintiff will prove "by medical records."  [Id. at 3.]  Plaintiff asserts that if Dr. Hall had been concerned about Plaintiff's health he would have consulted with Dr. Hopkins and viewed Plaintiff's medical records regarding his "chief complaint" – his "neck fusions." [Id.]

Plaintiff also has filed copies of his medical Progress Notes at the Detention Center for the period from January 18, 2005, through July 27, 2005, which he claims reveal that Dr. Hall never changed Plaintiff's Darvocet prescription, issued on February 24, 2005.  Rather, Delay, in full cooperation with Stewart and Ray, disregarded Dr. Hall's prescribed treatment in order to prevent Plaintiff from becoming addicted to narcotic medication. [Doc. 54 at 3-9.] Plaintiff states that "the Darvocet did not eliminate the pain, but along with the Robaxin allowed [him]

20

enough relief to sleep at night," but that, on or around March 11-15, 2005, he again experienced difficulty sleeping without severe pain, and he was informed that the Darvocet "was only a trial order." [Doc. 55 at 2.]

**D.   Plaintiff's motion to amend his complaint**

On October 24, 2005 – after Delay already had filed his summary judgment motion on October 10, 2005, and shortly before the Sheriff Department Defendants filed their summary judgment motion on November 10, 2005 – Plaintiff filed a motion to amend his complaint to add Dr. Hall as a defendant. According to Plaintiff, over a period of three months preceding Dr. Hall's dismissal on June 3, 2005, Dr. Hall had been aware of Plaintiff's excruciating pain, but had allowed him to suffer rather than prescribe the narcotic medication necessary to ease that pain. [Doc. 33 attach. ¶ IV.]

## IV.  DISCUSSION

**A.   The law of deliberate indifference to a serious medical need**

To prevail on a claim for relief under 42 U.S.C. § 1983, a plaintiff must establish that an act or omission committed by a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995). The Eighth Amendment prohibits indifference to a serious medical need

21

so deliberate that it "constitutes the unnecessary and wanton infliction of pain."

Estelle v. Gamble, 429 U.S. 97, 104 (1976) (internal quotations omitted).  To

demonstrate deliberate indifference, a plaintiff must show both "an objectively

serious medical need" and the defendant's subjective knowledge of, and more than

negligent disregard of, that need.  Farrow v. West, 320 F.3d 1235, 1245 (11th Cir.

2003).  See also Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir.

1994) (noting that "a 'serious' medical need is one that has been diagnosed by a

physician as mandating treatment or one that is so obvious that even a lay person

would easily recognize the necessity for a doctor's attention"), abrogated on other

grounds by Hope v. Pelzer, 536 U.S. 730 (2002).

"A core principle of Eighth Amendment jurisprudence in the area of medical

care is that prison officials with knowledge of the need for care may not, by failing

to provide care, delaying care, or providing grossly inadequate care, cause a prisoner

to needlessly suffer the pain resulting from his or her illness."  McElligott v. Foley,

182 F.3d 1248, 1257 (11th Cir. 1999) (noting that "prison officials may violate the

Eighth Amendment's commands by failing to treat an inmate's pain").  See Brown

v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (stating that a claim of deliberate

indifference lies when prison officials intentionally deny or delay access to medical

care or intentionally interfere with a prescribed treatment); Hill, 40 F.3d at 1187,

1188 (stating that "[d]elay in access to medical attention can violate the Eighth Amendment when it is tantamount to unnecessary and wanton infliction of pain," but that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed") (citation and internal quotations omitted); Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990) (stating that "a deliberate delay on the order of hours in providing care for a serious and painful broken foot is sufficient to state a constitutional claim").

Negligence, however, even rising to the level of medical malpractice, does not constitute deliberate indifference. McElligott, 182 F.3d at 1254. See also Hinson v. Edmond, 192 F.3d 1342, 1345 (11th Cir. 1999) (noting that it is well-settled that "medical malpractice–negligence by a physician–is insufficient to form the basis of a claim for deliberate indifference"), amended by 205 F.3d 1264 (11th Cir. 2000); Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (noting that "[m]ere negligence in diagnosing or treating a medical condition is an insufficient basis" for a deliberate indifference claim). Nor does a simple disagreement over a diagnosis or course of treatment constitute deliberate indifference. As long as the medical treatment provided is "minimally adequate," a prisoner's preference for a different treatment does not give rise to a constitutional claim. See Harris v. Thigpen, 941 F.2d 1495,

23

1504-05 (11th Cir. 1991); see also Adams, 61 F.3d at 1547 (concluding that the medical provider's "failure to administer stronger medication" to a prisoner who subsequently died was "a medical judgment and, therefore, an inappropriate basis for imposing liability under section 1983").

**B.**   **Analysis**

As noted above, a simple disagreement over a course of treatment does not rise to the level of deliberate indifference to a serious medical need. See Harris, 941 F.2d at 1504-05. On the other hand, "grossly inadequate" care that causes "a prisoner to needlessly suffer the pain resulting from his or her illness" does violate the Eighth Amendment prohibition against cruel and unusual punishment. See McElligott, 182 F.3d at 1257. Here, it is undisputed that, throughout the time period relevant to Plaintiff's complaint, he received medication for his complaints of pain. Defendants have detailed the various pain medications that were provided to Plaintiff at the Detention Center, and he generally agrees with their account. Defendants also have submitted Dr. Hall's sworn affidavit that "the prescribed course of treatment and periodic adjustments to medication for [Plaintiff] throughout his term of care under [Dr. Hall's] supervision met the applicable standard of care for a physician, and were adequate and appropriate to treat Plaintiff's complaints of pain," at least through June 3, 2005, two months after Plaintiff filed the instant action. [Hall Aff. ¶ 9.] Dr. Hall's

24

affidavit reveals that Defendants did not interfere with Dr. Hall's treatment orders for Plaintiff; instead, it was Dr. Hall's own decision to adjust Plaintiff's medications periodically.  [Id. ¶¶ 4-5.]  In sum, Defendants have come forward with sufficient evidence to support their contention that they are entitled to judgment as a matter of law because the treatment provided for Plaintiff's back pain at the Detention Center was at least "minimally inadequate."

Therefore, in order to avoid summary judgment, Plaintiff "must come forward with significant, probative evidence demonstrating the existence of a triable issue of fact."  See Chanel, Inc., 931 F.2d at 1477.  Moreover, in order to prevail, Plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment."  Hill, 40 F.3d at 1188.  Instead, Plaintiff has responded to the summary judgment motions by documenting his own subjective complaints of pain, set forth in his many medical requests and grievances.  These pleadings establish only that Plaintiff did, indeed, complain repeatedly while at the Detention Center about his need for stronger, i.e., narcotic, medication to treat his pain.  Although Plaintiff contends that he has been treated for his back pain by numerous doctors since March 2001, and that his painful back condition is well-documented in various scans and x-rays, including an x-ray performed in September 2005, Plaintiff has offered no evidence to support these contentions or to establish a

25

medical basis for his claims of "excruciating pain."  Instead, he has offered only

"conclusory allegations," which, without "supporting evidence[,] are insufficient to

withstand summary judgment." <u>See</u> <u>Holifield</u>, 115 F.3d at 1564 n.6.[8]

Accordingly, Defendants are entitled to summary judgment on Plaintiff's

deliberate indifference claims.  As for Plaintiff's remaining four "claims," he has

conceded that he was not denied access to legal materials; his grievance-procedure

claim is not cognizable because there is no federal constitutional right to a state

grievance procedure; and he has offered no evidence to support his two claims

---

[8]Although, as noted <u>supra</u>, "courts have been reluctant to apply" the evidentiary requirements of Rule 56(e) against <u>pro</u> <u>se</u> prisoners, the Court's reluctance is dissipated in this instance by noting the similar claims that Plaintiff brought in the United States District Court for the Middle District of Georgia against officials of the Butts County Jail.  <u>See</u> <u>Keith v. Whitehead</u>, Civil Action No. 5:04-CV-0143 (M.D. Ga. filed May 12, 2004).  In recommending summary judgment for three of the defendants in that case, the Magistrate Judge made the following findings: (1) although the plaintiff complained of "continued neck pain," he "was seen doing push-ups prior to reporting to medical" and it was noted that "he had a full range of motion in his neck"; (2) "[a] previous MRI of plaintiff's back showed no herniation or cervical spine injury," but "there was evidence in the record to show that plaintiff's treating physician, Dr. Hopkins, reported a history of symptom exaggeration and failing to report to physical therapy"; and (3) it was "determined that there was no medical reason for plaintiff to receive narcotic medication."  <u>Id.</u> Doc. 57 at 4-5 (Magistrate Judge's Recommendation).   The district court adopted this Recommendation with no "modification of the Magistrate Judge's findings." <u>Id.</u> Doc. 79.  This Court emphasizes that it is not using these findings as support for its conclusion that Defendants herein are entitled to summary judgment, but only as an explanation for declining to excuse Plaintiff's failure to respond to the instant summary judgment motions with significant, probative evidence.

regarding his legal mail.  Accordingly, the Sheriff Department Defendants are entitled to summary judgment on these claims also.[9]  See Sections III.B.3.-6., supra.

## C.    **Plaintiff's motion to amend his complaint**

Once an adverse party has filed a responsive pleading, a party may amend its original pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  However, "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile."  Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1262-63 (11th Cir. 2004).  See also Local 472 v. Georgia Power Co., 684 F.2d 721, 724 (11th Cir. 1982) (noting that, in determining whether a party should be allowed to amend its original pleading, "a court should consider whether there has been undue delay in filing, bad faith or dilatory motives, prejudice to the opposing parties, and the futility of the amendment").

Plaintiff apparently cannot decide whether Dr. Hall was the only official at the Detention Center who provided him with any meaningful relief, but whose orders were countermanded by the current Defendants, or, rather, whether he also deliberately ignored Plaintiff's suffering.  Moreover, it appears that Plaintiff has not

---

[9]The Court notes, in any event, that Plaintiff was not granted leave to pursue these remaining claims following the Court's review of his complaint pursuant to 28 U.S.C. § 1915A.  [See Doc. 4 at 5-6.]

27

served a copy of his motion to amend upon Dr. Hall or upon any current party to this action.  <u>See</u> Fed. R. Civ. P. 5(a) (requiring that "every pleading subsequent to the original complaint . . . shall be served upon each of the parties").  Finally, as set forth <u>supra</u>, the named Defendants are entitled to summary judgment on Plaintiff's claims of deliberate indifference, and, for the reasons stated, it would be futile to allow Plaintiff to amend his complaint to add Dr. Hall as a defendant.

## V.  CONCLUSION

For the foregoing reasons –

Plaintiff's motion to amend his complaint [Doc. 33] is **DENIED**;

Defendant Kindal R. Delay, P.A.,'s Motion for Summary Judgment [Doc. 17] is **GRANTED**;

Motion for Summary Judgment by Defendants Stewart, Ray and "Sheriff Department Medical Staff" [Doc. 38] is **GRANTED**; and

Plaintiff's two motions for appointment of counsel [Docs. 40, 70] and his "motion" for a settlement conference [Doc. 57] are **DENIED AS MOOT**.

**IT IS SO ORDERED**, this 5th  day of August, 2006.

_____
JACK T. CAMP
UNITED STATES DISTRICT JUDGE

28